IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| JAMES G. ALEXANDER, | ) CASE NO. 11-31329-H3-7 |
| Debtor, | ) |
| EASY WEAR GROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) ADV. NO. 11-3225 |
| JAMES G. ALEXANDER, | ) |
| Defendant. | ) |

ENTERED
04/03/2012

## MEMORANDUM OPINION

The court has held a trial on the above captioned adversary proceeding. The following are the Findings of Fact and Conclusions of Law of the court. A separate Judgment will be entered denying the relief requested by the Plaintiff. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

James G. Alexander ("Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on February 15, 2011.

Debtor operated a glass business, "Houston Glass," as a sole proprietorship starting during the 1980s.  Debtor testified that by 2007, Debtor's business had grown such that it had approximately 50 employees.

Debtor testified that his primary roles in the business of Houston Glass were to sell, procure more jobs, and occasionally to be present on job sites.  He testified that he hired lead glaziers to manage crews in installation of curtain walls, storefront glass, and glass doors.

Debtor testified that, prior to 2006, Debtor's day to day accounting records were prepared by Debtor's then-spouse, Kimberly Alexander.  After Kimberly Alexander left the business, in 2005, Debtor hired Steve Carter as his operations manager.  During 2006, Debtor and Kimberly Alexander were divorced.

Debtor testified that he delegated, first to Kimberly Alexander, and later to Steve Carter, the responsibility for overseeing the financial operations of Houston Glass, including the filing of tax returns.  Debtor testified that Carter had authority to sign checks for Houston Glass, prepared payroll checks for Houston Glass, and was responsible for filing of the employment tax returns for Houston Glass.[1]  He testified that

---

[1] By "employment taxes," this court means the taxes employers are to report to the United States Internal Revenue Service on Form 940 and 941.

Carter was directed to consult with Debtor's certified public accountant, Larry Mosley, regarding tax matters.

Debtor testified that, in 2007, Debtor had three large Projects: the Barton Place condominium project in Austin, Texas, which was being developed by White Construction Company ("White"), and two Lifetime Fitness centers, developed by FCA Construction Company.[2]

Debtor testified that the amount he believed Houston Glass would receive under its Barton Place contract with White was approximately $3.9 million. He testified that the Barton Place contract was larger than Houston Glass' other contracts. He testified that Debtor sought additional funding in order to make the Barton Place job run more smoothly.

During early 2008, Debtor executed a loan application for a line of credit with Plaintiff, an entity introduced to Debtor by Mosley.[3]  Debtor also provided to Plaintiff financial

---

[2] Debtor testified that, on the Barton Place project, White requested that Debtor form a corporation, in order to expedite bonding for the project. He testified that he incorporated Hill Country Glass, LLC ("HCG") for the purpose of the Barton Place project. He testified that he verbally disclosed to Carlton Lewis, a representative of Plaintiff, that he had incorporated HCG. HCG forfeited its corporate charter on February 10, 2012. (Joint Exhibit 7).

[3] Adam Khedouri, a representative of the Savile Finance Group, testified that DevCorp was a strategic partner of Savile Finance Group. DevCorp forwarded the loan application to Savile Opportunity Fund, L.P., with Southwest Credit (an assumed name of Plaintiff Easy Wear Group, LLC) acting as agent for DevCorp and Savile Opportunity Fund, L.P. The court refers to this group of

statements prepared by Mosley.  (Joint Exhibit 2).  Debtor, Mosley, and Carter traveled to Nevada to meet with Carlton Lewis, a representative of Plaintiff.

Debtor testified that Plaintiff requested that Debtor agree to a funds administration system in which White would forward funds earned by Houston Glass on the Barton Place contract directly to DevCorp.  DevCorp would then subtract any funds owed on the line of credit, and disburse any remaining funds to Debtor.  Debtor testified that White, the primary contractor on the Barton Place project, refused to deal with DevCorp.

On June 23, 2008, Debtor signed an agreement for funds administration, under which Debtor was to forward any funds received from White to a third party funds administrator.  The agreement was signed by Lewis on behalf of DevCorp Contract Financing Facility, LLC.  The copy of the agreement in evidence does not bear a signature on behalf of the third party funds administrator, Valley Construction Services.  (Joint Exhibit 1).

Savile Opportunity Fund, LP filed a financing statement with the Texas Secretary of State on June 23, 2008, identifying the debtor as Houston Glass Company,[4] and stating as collateral that "SFG will have a first priority lien over all current and

---

entities collectively as "Plaintiff."

[4]Houston Glass Company was an assumed name of Debtor.

future unencumbered assets." (Plaintiff's Exhibit 9). No security agreement is in evidence.

On June 23, 2008, Debtor requested an advance. A fee of $7,500 was paid to Valley Construction Services. An additional fee of $25,000 was paid to DevCorp. A total of $114,600 was disbursed to Debtor. (Plaintiff's Exhibit 6). Debtor testified that, prior to the first disbursement, Debtor was required to pay an additional $15,000 to DevCorp when Debtor first applied for the line of credit.

On November 18, 2008, Debtor requested a second advance, and received $126,554.40. (Plaintiff's Exhibit 7).

There was a third advance, on January 14, 2009, in the amount of $115,970. (Plaintiff's Exhibit 8). Debtor testified that he did not sign the request for the third advance. Nonetheless, Debtor does not dispute his debt to Plaintiff in the original principal amount of $389,684.40.[5] Debtor testified that each of the advances was used to purchase materials for the Barton Place project.

Debtor testified that he first learned in late 2008 that Houston Glass had not filed employment tax returns or paid employment taxes since 2005. He testified that he was unaware

---

[5] There is interest due on the advances by Plaintiff to Debtor. However, in light of this court's conclusion that the debt is dischargeable, the court does not make any finding as to the interest calculation.

before late 2008, including the times when he signed the loan application and the requests for the first two advances, that Debtor had an outstanding tax problem.

Debtor testified that he first became aware of the tax problem in late 2008, when he received a notice of levy from the Internal Revenue Service ("IRS") regarding taxes from the second quarter of 2005. He testified that he immediately contacted Mosley, and executed a power of attorney, in order to allow Mosley to obtain Houston Glass' tax records from IRS.

Mosley testified that he was unaware that Debtor's employment tax returns had not been filed, and that the taxes were not paid, until Debtor contacted him during late 2008. He testified that, after Debtor executed a power of attorney regarding the 2005 second quarter taxes, IRS informed him that there were employment tax problems for other years. Debtor ultimately executed a second power of attorney, covering the time from 2005 through 2010. Mosley testified he discovered that Houston Glass had not filed employment tax returns from the second quarter of 2005 forward.

On February 9, 2010, IRS filed notices of tax lien with the Texas Secretary of State, reflecting amounts owed totaling $1,644,181.20. (Plaintiff's Exhibits 11, 12).

The employment taxes owed were not reflected in the financial statements given by Debtor to Plaintiff during early

6

2008.  Khedouri testified that, had Plaintiff been aware of the outstanding tax liability of Debtor, it would not have approved the line of credit for Debtor, and would not have advanced funds to Debtor.

Debtor testified that, after 2008, a dispute arose between Debtor and White regarding the Barton Place project.  He testified that both White and FCA Construction Co. stopped paying Debtor for work on contracts.  He testified that White has made no payment to Debtor on the Barton Place project since Debtor received funds from Plaintiff.  He testified that Houston Glass is no longer in business.  He testified that for the past eight months, he has worked as a security officer, earning $11 per hour.

The court finds credible the testimony of Debtor, Mosley, and Khedouri.

## Conclusions of Law

Plaintiff seeks a determination that Debtor's debt to Plaintiff is nondischargeable under Sections 523(a)(2)(A), 523(a)(2)(B), and 523(a)(6) of the Bankruptcy Code.

Section 523(a)(2)(A) excepts from discharge a debt obtained by "false pretenses, a false representation, or actual

fraud, other than a statement respecting the debtor's or an insider's financial condition."  11 U.S.C. § 523(a)(2)(A).

Section 523(a)(2)(B) excepts from discharge a debt obtained by:

> (B) use of a statement in writing –
>     (i) that is materially false;
>     (ii) respecting the debtor's or an insider's financial condition;
>     (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
>     (iv) that the debtor caused to be made or published with intent to deceive.

11 U.S.C. § 523(a)(2)(B).

Section 523(a)(6) excepts from discharge a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

As to each of the grounds asserted for exception to discharge, Plaintiff bears the burden of proof by a preponderance of the evidence.  Grogan v. Garner, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

Plaintiff's argument under Section 523(a)(2)(A) is articulated in the pretrial statement (Docket No. 18):  Plaintiff asserts that Debtor "misrepresented the ownership of the contract receivable which was used as collateral for the loan to the Debtor."

In the instant case, Debtor's credible testimony is that he informed Lewis that HCG was the party contracting with White.  Additionally, although Plaintiff filed a financing statement with the Texas Secretary of State, it has not presented sufficient evidence that it had a security agreement such that Debtor's receivable from White would be collateral for its loan.  Moreover, nothing in the documents in evidence indicates that funds from the Barton Place contract with White were dedicated to repayment of the advances from Plaintiff.  The court concludes that Plaintiff has failed to meet its burden of proof as to the relief requested under Section 523(a)(2)(A).

Plaintiff's argument under Section 523(a)(2)(B) is based on the financial statement provided by Debtor to Plaintiff.  It is clear that the financial statement was materially false, in its omission of more than $1.6 million in taxes owed by Debtor, and it is clear that Plaintiff reasonably relied on the financial statement in making the loan to Debtor.  However, Plaintiff presented no evidence to support a contention that Debtor provided the false financial statement with intent to deceive.  The credible testimony of Debtor and Mosley indicates that Debtor did not know of the employment tax debt when he submitted the loan application, or when he made the requests for advances.  The court concludes that Plaintiff has failed to meet its burden of proof as to the relief requested under Section 523(a)(2)(B).

Regarding Section 523(a)(6), the Fifth Circuit has held that an injury is "willful and malicious" where there is either an objective substantial certainty of harm or a subjective motive to cause harm.  Miller v. J.D. Abrams Inc. (In re Miller), 156 F.3d 598 (5th Cir. 1998).

In the instant case, Plaintiff asserts that the debt should be nondischargeable under Section 523(a)(6) because "monies dedicated to the repayment of the loan extended to Debtor were misappropriated by the Debtor and not delivered to the third party Valley Construction Services, Inc." (Docket No. 18). Plaintiff did not present any evidence to support the contention that funds from the Barton Place contract were dedicated to repayment of Debtor's debt to Plaintiff.  In fact, Debtor's credible testimony is that Debtor received no funds from White on the Barton Place contract after receiving funds from Plaintiff. Plaintiff presented no evidence of a subjective motive to cause harm, or of Debtor's knowledge of the outstanding tax debt.  It is clear that Debtor should have known of the outstanding tax debt.  However, for purposes of determining dischargeability under Section 523(a)(6), courts have denied relief to plaintiffs where a debtor does not know, but should have known, facts which, if known by the Debtor, would have created an objective substantial certainty to Debtor of causing harm.  See In re Markowitz, 190 F.3d 455 (6th Cir. 1999); In re Jercich, 238 F.3d 1202 (9th Cir. 2001); In re Englehart, 229 F.3d 1163 (10th Cir.

2000). The court concludes that Plaintiff has failed to meet its burden of proof as to the relief requested under Section 523(a)(6).

Based on the foregoing, a separate Judgment will be entered denying the relief requested by Plaintiff in the above captioned adversary proceeding.

Signed at Houston, Texas on April 3, 2012.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE